**Harold JACOBSON, Plaintiff,**

v.

**Marion B. FOLSOM, Secretary of Health, Education and Welfare, Defendant.**

United States District Court
S. D. New York.
Dec. 18, 1957.

Halperin, Natanson, Shivitz, Scholer & Steingut for plaintiff, David I. Shivitz, of counsel.

Paul W. Williams, U. S. Atty., for the S. D. of New York for defendant, William Stackpole, Asst. U. S. Atty., of counsel.

IRVING R. KAUFMAN, District Judge.

This action was instituted by the plaintiff pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S. C.A. § 405(g) [1] to review a decision of the Secretary of Health, Education and Welfare, denying the plaintiff disability benefits to which he is allegedly entitled.

By this motion plaintiff seeks summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A., on grounds that there are no genuine issues as to any material facts and that he is entitled to judgment as a matter of law. Defendant has cross-moved for the same relief. No affidavits are annexed to the moving papers since the issue to be decided can be adjudicated on the basis of the pleadings and the certified copy of the transcript of the record of the proceedings before the Social Security Administrator.[2]

1. Section 205(g) provides: "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow."

2. Section 205(g) provides: "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

In his complaint plaintiff alleges that on October 27, 1955, he filed an application with the Bureau of Old-Age and Survivors Insurance of the Social Security Administration for the purpose of establishing a period of disability under Section 216(i) of the Act as amended, 42 U.S.C.A. § 416(i). This section was enacted to protect a wage earner's old age and survivors insurance rights against impairment of his earning capacity through total disability before reaching the retirement age.

Under the provisions of the Social Security Act as it existed prior to 1954 the amount of the monthly Social Security benefits payable to the wage earner or his beneficiary upon retirement or death was computed by taking the total earnings of the wage earner from a specified starting date to age 65, or death, and dividing this figure by the total number of months elapsed during this period. If the wage earner had been disabled during any of this period he would presumably not have received any wages and the inclusion of such a period of disability in the computation of his average monthly earnings would dilute the benefits he or his beneficiary would be entitled to receive under the Act. To meet such an eventuality the Act was amended in 1954 to provide that upon a showing of total disability for a period of six months or more during which the wage earner was unable to engage in any substantial gainful occupation the periods during which the disability existed shall be excluded from his earning record thereby creating a so-called "disability freeze". Title 42 U.S.C.A. §§ 415(b) (1) (A), 416(i).

Plaintiff contends that while working as a full-time insurance salesman for the Metropolitan Life Insurance Company in New York City, he was afflicted on July 28, 1950 with what was subsequently diagnosed as coronary insufficiency and gall bladder disease. It is this condition which allegedly precludes plaintiff from engaging in any activity requiring physical exertion. As a result of this disability plaintiff was retired by Metropolitan and became eligible to receive monthly total and permanent disability benefits under the Company's Employees Insurance and Retirement Program. At the same time, apart from and in addition to its Employee Plan, he was granted certain disability benefits under the provisions of an insurance policy which he had with Metropolitan. Since his impairment plaintiff admits engaging in a rather limited selling of insurance under a special license issued by Metropolitan to people who like plaintiff are totally disabled. However, the restricted efforts of plaintiff under this license were not very rewarding and over a period of five years he allegedly did not earn more than a total of $1,500.

It was under these circumstances that plaintiff on October 27, 1955 applied to the Social Security Administration to establish a period of disability and freeze his Social Security earning record. On March 26, 1956, the plaintiff was notified by the District Office of the Social Security Administration that his application had been denied. Upon formal request by plaintiff, a hearing was held on his claim without benefit of counsel before Referee Robert P. Bingham. This hearing resulted in an adverse determination against plaintiff on August 31, 1956 upon the finding of Referee Bingham that plaintiff was able to engage in some substantial activity.

On September 4, 1956, plaintiff requested a review by the Appeals Council of the referee's decision which was denied. On November 2, 1956 plaintiff's counsel requested the Appeals Council to reconsider its decision. Upon denial of this request the instant action was commenced on December 3, 1956.

Under Section 205(g) of the Social Security Act 42 U.S.C.A. § 405(g) the findings of the Secretary [3] as to any

---

3. Under regulations (20 C.F.R. § 403.710 (e) (1949)) the referee's decision became the final decision of the Secretary within the meaning of Section 205(g) of the Act when the Appeals Counsel denied plaintiff's reqeust for review. See

facts if supported by substantial evidence are made conclusive on the courts and a hearing de novo may not be had on the evidence. See Ferenz v. Folsom, 3 Cir., 1956, 237 F.2d 46, certiorari denied 1956, 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed. 2d 551; Hobby v. Hodges, 10 Cir., 1954, 215 F.2d 754; Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531; N. L. R. B. v. Link-Belt Co., 1941, 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368. But it was never intended that the courts should abdicate their "conventional judicial function" to review. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456. Where the administrative decision is based upon conclusions not reasonably reached upon due consideration of all the relevant issues presented or where the parties have not been given a fair opportunity to be heard upon the facts and applicable law the court may properly correct the errors below. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776; Wilson v. Folsom, D.C. D.N.D.1957, 151 F.Supp. 195.

In this case the sole issue before the referee was whether since July 28, 1950 or commencing at any time prior to his 65th birthday and continuing to the time he filed application for a disability determination, the claimant was unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration" (42 U.S.C.A. § 416(i) (1). From the record made before the referee it appears that plaintiff testified that his condition was diagnosed as coronary artery disease, that he suffers from shortness of breath, and that he finds climbing and walking around as well as travelling or working in congested areas too much of a strain. The above diagnosis and plaintiff's complaint of shortness of breath and sensations of weakness upon exertion were corroborated by two medical reports which were attached to the record and presumably considered below along with

the other evidence. If plaintiff's testimony be accepted as proven fact, for the purposes of this proceeding, I believe he would have established his right to relief under Section 216(i). In a release of the Department of Health, Education and Welfare in June 1957 reported in CCH Unemp. Ins. Reports, Vol. 1–A, Fed. para. 8280 examples are given of some impairments which would ordinarily be considered severe enough to prevent substantial gainful activities, one of which is:

> "Disease of heart, lungs, or blood vessels which have resulted in major loss of heart or lung reserve as evidenced by X-ray, electrocardiogram or other objective findings so that, despite medical treatment, it produces breathlessness, pain or fatigue on slight exertion, such as walking several blocks, using public transportation or doing small chores."

In spite of this pronouncement and without any evidence in contradiction of the testimony and medical records of the plaintiff or any attack on his credibility the referee found "that the claimant's physical impairments have not so seriously affected his over-all ability as to make him continuously unable to do any type of substantial gainful work." Referring to this part of plaintiff's testimony the referee noted that "from his appearance and testimony the claimant appears to be a person who presently suffers no shortness of breath, is presentable, and is in full possession of his mental faculties." Such a lay observation as was made by the referee can only have been based on surmise and speculation and is certainly of insufficient probative value to derogate from plaintiff's testimony supported by medical records.

It further appears from the record of the hearings and from the referee's subsequent decision that undue weight was placed upon the few sales made by plaintiff under his special license.[4] In view of the very limited com-

Goldman v. Folsom, 3 Cir., 1957, 246 F. 2d 776, 778; Norment v. Hobby, D.C. N.D.Ala.1953, 124 F.Supp. 489, 490.

4. The referee stated in his decision, "The fact is that for the last two or three years he [claimant] has been able to

mercial activity of plaintiff after his affliction, a determination with respect to such activity consistent with a finding of permanent and total disability may very well have been made. An understanding of human nature reveals that a person may attempt such sporadic and limited work not because of his ability to work but because of his unwillingness to live a life of idleness even though he be totally and permanently disabled within the meaning of Section 216(i). See Berry v. United States, 1941, 312 U.S. 450, 455–456, 61 S.Ct. 637, 85 L.Ed. 945.

■ A review of the record also leads me to believe that the referee in concluding that plaintiff was capable of engaging in some gainful work may have contemplated that plaintiff seek employment as a clerk. Indeed, the referee inquired of plaintiff whether or not he considered himself capable of clerical work. Plaintiff replied that he was not "fit" for that type of work, and later that he couldn't stand "the mental strain of working in an office" or under such close supervision. Even assuming that plaintiff was physically capable of engaging in clerical work it does not necessarily follow that he was able "to engage in any substantial gainful activity." Implicit in this criterion is that the gainful work be commensurate with plaintiff's educational attainments, his training and experience. See United States v. Still, 4 Cir., 120 F.2d 876, 880, certiorari denied 1941, 314 U.S. 671, 62 S.Ct. 135, 86 L.Ed. 537; Fuller v. Folsom, D.C.W.D.Ark., 155 F. Supp. 348; Cf. Arico v. Prudential Ins. Co. of America, 2d Dept.1934, 241 App. Div. 826, 271 N.Y.S. 241. For a man engaged in active and high pressure selling all of his adult life a transition at this late stage in life to a "white collar" job under close supervision might be unrealistic and irreconcilable with his

training and experience. Furthermore, his ability to obtain such employment, in view of his selling background, might be doubtful. In any event these are matters that should have been considered by the referee.

■■ I am fully cognizant that the burden of proving disability under the statute is on the claimant.[5] Conceivably, plaintiff's evidence, even if unimpeached and uncontradicted possessed insufficient probative value to meet this burden. Nevertheless, in view of the misplaced emphasis on some of the evidence adduced at the hearing and plaintiff's claim that he has further evidence to introduce in his behalf, I believe it would be wiser and in keeping with a sense of fair play for this proceeding to be remanded to the referee so that he may hear and consider plaintiff's additional medical evidence.

Plaintiff is a man well along in years with a minimal amount of formal education. He is obviously unacquainted with the nuances and distinctions of the law and is unfamiliar with the processing of a claim before the Social Security Administration. The record indicates that his demeanor at the hearing without counsel was that of bewilderment and his answers were unresponsive. His repeated failure to produce the documents and reports regarding Metropolitan's Disability Employees Plan and insurance policy under which he was found totally and permanently disabled further evidences plaintiff's inability to fully comprehend the nature of the proceedings. My attention is directed particularly to the following colloquy concerning the production of one of these policies:

"Q. You don't have a copy of their policy [Metropolitan's] do you? A. I have an idea of what is total and permanent disability.

---

make a few such sales under this license and probably could make more but for the possibility of jeopardizing his disability payments from the insurance company." In addition a good part of the record is taken up with questions concerning plaintiff's efforts under his special license.

5. This is implicit from the wording of Section 216(i) (1) which provides that "An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required." See also Thurston v. Hobby, D.C.W.D.Mo.1955, 133 F. Supp. 205, 210; Norment v. Hobby, D.C. N.D.Ala.1953, 124 F.Supp. 489, 491.

"Q. Then they define what is total and permanent disability? A. But they define it differently on a policy than an employee. That means I can't do the type of work I did for years but on the policy it tells you there—you can't do any type of work.

"Q. I don't know and I don't want to do anything that is going to do something that will ·embarrass you in connection with your policy. A. May I ask a blunt question? Of course, I may not have any right.

"Q. I may not answer it. A. According to the evidence in front of you regardless of bothering Dr. Treitman or bothering the company because I have tried to bother them for years—they call me a pest trying to get something—according to the evidence, do you personally as a layman if you listened to the evidence, do you think that I am entitled to a freeze?

"Q. To be just as frank as you were, I make it a practice never to discuss a particular case before me except in the form of a written decision which goes out to the applicant over my signature. I write that and that's in writing for all to read and thereafter I don't discuss it with anybody and before it, I don't. A. The reason I say that, if I have to go ahead they are going to give it to me, I guess. I don't know if I need it or absolutely need it for the evidence. I will try to get it but if it isn't necessary I will try not to bother.

\* \* \* \* \* \*

"Q. This is your case. You will have to make up your own mind whether or not you think you can get this information or you can't. I understand the situation. I will give you ten days to get the evidence. If it is received, I ·will consider it with all the other evidence. If it isn't I'll consider the case on the record. All right?" (Tr. 39–40).

Elsewhere in the record, the production of the Metropolitan policies and reports was again discussed.

"Q. I am not sure whether or not Metropolitan will comply with your request but I am willing to give you a letter saying, in effect, that it will be helpful to the presentation of your matter if their records with respect to your disability, a copy of them, be obtained and introduced in evidence. I don't want to cause the doctors any kind of inconvenience. I am not going to subpoena them or do anything of that kind. A. I am very frank with you. If I am going to cause anybody any trouble—I feel I am entitled to the freeze—but if I am going to cause trouble I rather drop the whole thing. I don't want to cause anybody any trouble. I don't want to cause the company to say, "What are you doing, Jacobson —trying to force people to give out information?" I don't want to go through the excitement." (Tr. 36).

Though the Social Security Administration is in no sense bound by the finding of disability made by plaintiff's employer [see Wendt v. Folsom, D.C.E.D. La., decided May 9, 1957, reported in C. C. H. Unemp. Ins. Reports, Vol. I-A Fed. para. 8305] if the criterion for disability in Metropolitan policies is substantially similar to the one found in Section 216(i) which governs the referee's determination the introduction of such policies would represent very persuasive evidence in plaintiff's favor. But from the colloquy quoted it would appear that plaintiff, without the benefit of counsel was unable to appreciate the importance of this type of evidence.

■■ I do not mean to imply or suggest that plaintiff's failure to heed the requests of the referee is to be condoned. To be sure the mode and manner of presenting a claim before the Social Security Administration should be left entirely to the discretion of the claimant and any and all decisions he makes as to the order of presenting his evidence, and the evidence which he desires to introduce or

withhold are made at his peril. Once provided with the opportunity of conducting his case in a manner according to his own choosing a claimant may not subsequently obtain a rehearing on the grounds that he might have fared better if he proceeded on an alternative course.

But in this case we have a situation where the referee is under a duty to explore for himself the merits of plaintiff's claim.[6] In view of the relevancy and crucial effect that production of the Metropolitan policies and reports might have upon the ultimate disposition of plaintiff's claim it would have been wiser for the referee, under the circumstances here, to subpoena if necessary this vital evidence.[7] To deny plaintiff's claim without the benefit of this evidence might very well deprive a meritorious claimant of the ameliorative benefits conferred by the 1954 amendment. In view of these dire conseqences, I would think that the legislative purpose and intent can be better served by permitting plaintiff to be heard on this additional evidence.

Title 42 U.S.C.A. § (405(g) provides:

"The court * * * may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm its findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision and a transcript of the additional record and testimony upon which its action in modifying or affirming was based."

It is desirable in this case that a final determination of the merits of the claim be guided by a more complete showing particularly with regard to medical evidence apparent on the face of the record. See Werner v. Folsom, D.C. W.D.Wash., decided April 1, 1957, reported C. C. H. Unemp. Ins. Reports, Vol. I–A Fed. para. 8279. Accordingly I shall remand the case pursuant to the authority in 42 U.S.C.A. § 405(g) to the Secretary for the purpose of taking this additional evidence. I assume that the Secretary will in turn again delegate Referee Bingham the duty of conducting this hearing. At such hearing the referee is instructed to further explore the plaintiff's claim of disability. If he doubts the nature of the disability as claimed by plaintiff, the referee should procure an independent medical examination and should not rely solely on his personal and unprofessional observations to refute plaintiff's testimony. The referee should further inquire into the likelihood of plaintiff obtaining different employment and should make findings whether such employment would be suitable for a man of plaintiff's background. Finally the reports and policies of the Metropolitan Life Insurance Company should be obtained and considered along with the other evidence. At this hearing plaintiff is desirous of being represented by counsel of his own choosing and I am certain the referee will afford him this privilege.

The case is accordingly remanded to the Secretary for further proceedings consistent with this opinion and both motions for summary judgment are denied without prejudice.

Settle order.

---

6. See Section 205(b) of the Social Security Act as amended 42 U.S.C.A. § 405(b) which authorizes the Secretary "on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence."

7. His authority to subpoena is found in 42 U.S.C.A. § 405(d).