**Leo S. AUBRY, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 12357, Division D.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 15, 1963.

768

William S. Darr, New Orleans, La.,
for plaintiff.

Gene S. Palmisano, Asst. U. S. Atty.,
New Orleans, La., for defendant.

AINSWORTH, District Judge.

Plaintiff seeks a review of a final decision of the Secretary of Health, Education and Welfare, 42 U.S.C.A. § 405 (g), denying his application for disability benefits and eligibility for a disability freeze as defined in 42 U.S.C.A. §§ 416 and 423.

Defendant has moved for summary judgment on the ground that the findings of the Secretary of Health, Education and Welfare are supported by substantial evidence.

Plaintiff filed application for disability benefits under the Social Security Act on October 4, 1960, alleging disability from 1954, which was denied. Upon request of plaintiff a hearing was held before a hearing examiner on October 18, 1961, who rendered a decision on December 21, 1961, holding that claimant was not entitled to disability insurance benefits nor to a period of disability. The decision of the hearing examiner became the final decision of the Secretary, subject to judicial review, when the Appeals Council on April 17, 1962 denied a request for review of the hearing examiner's decision. Plaintiff last met the special earnings requirements on March 31, 1956.

Plaintiff is a 46-year-old, colored male, emaciated in appearance, weighing 110 pounds and measuring 5′7″ in height. One leg is approximately ½″ shorter than the other and his left leg is partially paralyzed as the result of a birth injury or polio as an infant, which causes him to walk with a decided limp. In 1936, as the result of an automobile accident, his left arm was amputated high above the elbow. In 1954, he fractured his right clavicle (collar bone) which has healed but which still causes pain.

He completed approximately seven years of school. In 1954, his sister who lives in California secured a job for him as a hotel clerk in that state. He was discharged after ten months from this job because of a change in ownership of the hotel. He then returned to New Orleans, his home, where he sold lottery tickets from 1946 until March 1954 when police action closed down the lottery business. He worked approximately 4 hours a day, 6 days a week, going from house to house, "writing lottery numbers." He has not worked since. When this job terminated he stayed at home to help take care of his invalid, aged mother until her death in 1960. His mother received Social Security benefits and an old-age pension totalling $114.00 per month on which he and his mother lived until her death. He refused a job as porter in 1958 because he felt he was needed at home to nurse his mother. He lives in one half of a double house which is owned by him and three members of his family. The other half is rented for $42.00 a month, out of which he retains $27.00; he sends the balance of $15.00 to the three other heirs, two in California and one in New Orleans. This is his only income. At the hearing before the examiner he testified that he has attempted to find a job but because of his physical condition he has been unsuccessful. He registered at the employment office at Gretna but no job has been found for him. He applied for a job as watchman but was refused because of his inability to pass a physical examination. He was likewise

rejected for a job at a funeral home because of his handicap. He was also refused a job at a bar because he "couldn't open bottles and break the seals" and couldn't handle the crowd. In his request for hearing to the Social Security Administration, he stated, "I am unable to find any work at all. No one will hardly even talk with me about a job."

Findings of fact by the Secretary, if supported by substantial evidence, are conclusive. 42 U.S.C.A. § 405 (g). Neither the district court, nor an appellate court, has the right to make its own appraisal of the evidence, Carqueville v. Flemming, 7 Cir., 1959, 263 F. 2d 875. Furthermore, the finality accorded by 42 U.S.C.A. § 405(g) to the administrative findings extends to the inferences from the evidence made by the Secretary, and the district court is precluded from substituting contrary inferences from the findings of fact. Carqueville v. Flemming, supra; Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531. These mandates are well established. Our decision in no way attempts to substitute contrary findings of facts or inferences drawn therefrom. We are of the opinion, however, that the findings are not supported by substantial evidence sufficient to make a determination that plaintiff is not entitled to disability benefits.

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

The findings of the hearing examiner, adopted by the Secretary are apparently based on medical evidence from which we have made the following excerpts:

From "Vocational Rehabilitation Cardiac Disability Report" supplied by Dr. Levy, April 16, 1955.

Hypertension. Blood pressure: 200/110. Slight left ventricular hypertrophy. Sinus rhythm caused by blood pressure 200/100. Recommended that patient could be safely placed in training for employment on full time schedule, 8 hours a day. Prognosis: Fair. Further medical check-up necessary.

From "Vocational Rehabilitation General Medical Record" supplied by Dr. Saleeby, November 9, 1955.

Diagnosis: Blood Pressure: 200/100. Hypertension; myocardial [pertaining to heart muscle tissue] disease; amputation of left arm; partial paralysis of left leg. Disability cannot be removed by treatment, nor substantially reduced by same. Ability to work: Light. Treatment for hypertension recommended.

From letter of Dr. Kliesch to Counselor of Vocational Rehabilitation, November 2, 1960.

Pain at site of an old clavicular fracture. Tender lump present on right clavicle at the site of his old injury. Blood pressure: 200/120. Occasionally the patient awakens with true vertigo which passes away without treatment. Decided limp is present. Suggest orthopedic consultation in regard to this man's back trouble if you deem it necessary. He could work if he wished to work. His hip and back are no worse than they were for many years when he did work.

From report of Dr. Grunsten, November 15, 1960.

There is elicited some tenderness in the region of the bicepital groove of the right shoulder with a snapping sensation noted in this area when the patient performed anterior flexion and abduction motions of the shoulder. The left lower extremity is ½" shorter than the right. X-ray studies of the pelvis and hips were obtained. There is evidence of bilateral congenital coccyvara of a severe degree. It is the opinion of

the examiner that this patient is certainly capable of performing normal activity with relation to the use of the right upper extremity except for the fact that he should not be permitted to do heavy lifting or work around machinery where potential severe injury of this extremity could be incurred. Because of the congenital coccyvara involving both hips, it is felt that this patient's ambulation capacity should be restricted to a mild degree, however, a certain degree of weight bearing during the course of the day is beneficial as long as it is not too extreme.

At the hearing of defendant's motion for summary judgment, plaintiff, represented by counsel for the first time, submitted additional medical evidence which he offered to prove if the case is remanded to the Secretary for further proceedings. Plaintiff was examined by Dr. Lindsey on January 24, 1963, who evaluated plaintiff's present physical condition as "totally disabled on the basis of his elevated blood pressure [200/100] or his multiple skeletal defects."

It is significant that four of the five doctors reported plaintiff's blood pressure to range from 200 to 210. This condition alone was sufficient to cause Dr. Lindsey to render his present diagnosis as total disability. Only one of the doctors who examined plaintiff at government expense commented on his complaint of dizziness. Dr. Kliesch reported, "Occasionally the patient awakens with true vertigo which passes away without treatment." All of the medical reports ignore plaintiff's complaint of nose bleed.

In the hearing examiner's findings he states:

"He also complains that he tires easily and he cannot walk far. He further testified he suffers from high blood pressure and experiences dizziness and nose bleed. *The dizziness started in about 1957* and he experiences it 3 or 4 times a week when he stoops down. *He started having nose bleed in 1956 or 1957* about twice a month and now he experiences that about twice a week and has to pack it with cotton until it stops bleeding." (Emphasis addded.)

Based on the oral testimony of plaintiff, the hearing examiner's appreciation of the time of the onset of plaintiff's dizziness and nose bleed is correct. Apparently, however, plaintiff's memory as to these dates was faulty. The testimony shows:

"Q. You didn't notice any dizziness or nosebleed until about 1957?

"A. '57 and '56. I went to Dr. P. J. Saleeby in Algiers. I can't go to him. He stopped taking colored about two years ago. * * * *"

Dr. Saleeby's report, which is part of the record of the hearing examiner, however, is dated *November 9, 1955;* it shows blood pressure of 210/110 and a recommendation for treatment of hypertension. It was this report in 1955 which stated that *the disability could not be removed nor substantially reduced by treatment.*

In order to meet the requirements of the Act for monthly disability insurance benefits, plaintiff must have been disabled on or before March 31, 1956, the time when he last met the special earnings requirements, through October 4, 1960, when he filed this application. The quarters of coverage requirements were met in this case on March 31, 1956 according to the examiner's findings (Tr. 5). It should be emphasized, therefore, that Dr. Saleeby's report is dated prior to the time of the expiration of plaintiff's special earnings requirements period.

■ Under the circumstances, and after a review of the evidence, we find that the hearing examiner's findings that plaintiff was not disabled in March 1956 are not supported by the evidence.

In Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916, the court held that the determination as to whether applicant

was unable to engage in substantial and gainful activity "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available, Aaron v. Flemming, D.C.M.D.Ala., 1958, 168 F. Supp. 291, 295."

Applying this test to plaintiff, it is obvious that (1) plaintiff can do very little. He testified that he tires easily; one leg "tends to slip" and "gives way" when he stands. A Mr. Lamothe (who also testified at the hearing) helps him in his household chores, cleaning, cooking, etc. "I leave the door open sometimes for Mr. Lamothe to come in because the leg bothers me so much I can't get up in the morning." Plaintiff is able to bathe and shave himself, do a little sweeping, burn trash, and to walk around the neighborhood a little. He attends church, which is eight blocks distant from his house, when he has a dime for bus fare. It is difficult to see how a man suffering from so many handicaps would be able to keep a job if he were able to find one; and (2) the record shows that because of his disability he has been consistently rejected in his attempts to find a job. It is true that he refused a job as a porter in 1958 because he felt it would prevent him from taking care of his aged mother. However, he later testified, "I was not able to feed, clothe and bathe my mother. The Welfare Department paid for someone to do this." It is very doubtful that plaintiff would have been physically able to work as a porter. In 1958 he was suffering from the same disability as now. In November 1960 Dr. Kliesch reported that "his hip and back are no worse than they were for many years when he did work." When plaintiff did work, however, he chose his own time, worked only part of the day, and in the vicinity of his home, where he could return if he became weary. He testified that even at that time it was difficult to get around because of his leg:

"Q. Eight years you went from house to house taking lottery numbers which would mean you have to walk and climb some steps, wouldn't you?

"A. Yes, I had to go some steps. It used to worry me but not as bad as it worries me now."

■ A finding of lack of disability is not predicated upon the fact that a claimant did in fact work. "The mere fact that he worked does not disprove his disability, since work could have been forced upon him to keep the wolf from the door." Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470 (citing Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321). These two decisions of the Fifth Circuit are also authority for the rule-of-thumb measurement of $1,200.00 yearly earnings to determine substantial employment in disability cases.

Defendant relies on the Hicks case, supra, for the proposition that mere inability to find substantial employment is not sufficient for a finding of disability under the Act. In the Hicks case it was found, however, that claimant had earned an annual income of approximately $1,300.00 and that he was fully able to perform that work. The court felt that there was justification in finding that claimant was not under a disability preventing him from engaging in any substantial, gainful activity. Plaintiff here, however, is both incapable of engaging in substantial, gainful activity as well as being unable to find employment, and significantly the reason why he is unable to find substantial, gainful employment or any type of employment is because of his disability.

In Melisi v. Flemming, E.D.N.Y., 1961, 193 F.Supp. 560, the district judge vacated and set aside his prior decision (which denied plaintiff's motion for summary judgment and granted defendant's cross-motion for summary judgment) on

the authority of Kerner v. Flemming, supra. The court said:

"And, at page 922 [quoting Kerner v. Flemming], 'We think that was the appropriate course for the District Judge to have followed here, (to have remanded the case to the Secretary for the taking of additional evidence) as Judge Kaufman did in Jacobson v. Folsom, D.C.S.D. N.Y., 1957, 158 F.Supp. 281. It should not be hard to provide better medical evidence as to what work plaintiff can and cannot do, and the Secretary's expertise should enable him readily to furnish information as to the employment opportunities * * * or the lack of them, for persons of plaintiff's skills and limitations.' * * *

"The quotations cited above are applicable to the case at bar. There was no evidence in the record to indicate what employment opportunities, if any, were available for persons of the plaintiff's skill and physical limitations."

In Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, in reversing the district court which upheld an adverse decision on the plaintiff's application for a disability freeze, Judge Brown of the Fifth Circuit said:

"Considering the background, experience, training, education, physical and mental capabilities of the Claimant, the kinds and types of employment formerly followed and no longer open to him, the absence of any indication of any specific work less exacting within his residual competency and reasonably available as a prospective source of employment in the general area where he lives, this record satisfies that test. When the Claimant could no longer even shuffle dominoes, *he was not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment.*" (Emphasis added.)

Judge Brown further stated in Butler v. Flemming, supra:

"Perhaps it is true that history teaches that 'A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities * * *.' But the purpose of much social security legislation is to ameliorate some of these rigors that life imposes. Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act."

Here we are confronted with a man whose physical appearance alone would be a deterrent to his obtaining employment. The court had the opportunity to observe him at the hearing of the motion. He walks with apparent great difficulty, slowly shifting his weight from one foot to the other causing his body to twist and bend in doing so; his left arm has been amputated which lends an even greater grotesque appearance to his painful gait. In addition to the obvious skeletal defects, he suffers from hypertension, dizziness, weakness and nose bleed. Despite the fact that he is laboring under these painful and uncomfortable handicaps he has attempted to secure employment to no avail. It is difficult for the court to understand the basis of the hearing examiner's conclusions that this man is not totally disabled.

Accordingly, defendant's motion for summary judgment is denied. The record itself standing alone justifies remanding this case to the Secretary with the direction that additional evidence be taken to determine whether plaintiff has the ability and the opportunity to engage in any substantial, gainful work commensurate with his education, train-

ing, experience and physical and mental capacities. This determination should be made consistent with the views expressed in this opinion. In particular it should include current comprehensive medical evidence. It is so ordered. Judgment accordingly.