**Ruby J. BURROW, Mother and Natural Guardian of Robert E. Hall and Patrick D. Hall, Minors, Plaintiff,**

v.

**Robert H. FINCH, Secretary of the Department of Health, Education and Welfare, Social Security Administration, Washington, D. C., Defendant.**

**Civ. A. No. 16571-3.**

United States District Court
W. D. Missouri, W. D.

April 24, 1969.

As Corrected May 12, 1969.

---

Sol. M. Yarowsky, Kansas City, Mo., for plaintiff.

John M. Carter, Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT REVERSING DECISION OF DEFENDANT

BECKER, Chief Judge.

This is an action brought by plaintiff under Section 405(g), Title 42 U.S.C.A., to review a final decision of the Secretary of Health, Education and Welfare, rendered against her on her application for full retroactive children's benefits for her two sons. The record shows that on the question here at issue, after an initial determination adverse to her, the plaintiff requested and obtained reconsideration by the defendant; that again decision was rendered unfavorable to her; that she requested and obtained a hearing before a hearing examiner of the Bureau of Hearings and Appeals; that the hearing examiner rendered a decision favorable to plaintiff; that the Appeals Council reviewed on its own motion the decision of the hearing examiner, and reversed that decision. Thereby, plaintiff's remedies were exhausted. Thereafter she filed her complaint in this Court on August 15, 1967.

The undisputed portion of the facts in the case is as follows: Ruby J. Burrow, plaintiff herein, married the wage earner now deceased, Robert L. Hall, on March 11, 1949. Two children (on behalf of whom this claim is prosecuted) were subsequently born of the marriage—Robert E. Hall on January 30, 1950, and Patrick D. Hall on January 25, 1953. On May 20, 1953, the wage earner abandoned plaintiff. Plaintiff subsequently obtained a divorce from the wage earner on December 31, 1953, but not before he had married one Erma J. Hall on August 15, 1953. Two children were born of this latter union, Robert L. Hall, Jr., and Rebecca D. Hall, on May 22, 1954, and April 6, 1956, respectively. In May of 1964, the wage earner died. In July of that year, Erma Hall applied for survivor's benefits under Section 402(g) (1), Title 42 U.S.C.A., which provides for mother's insurance benefits[1] and

---

1. The section currently reads as follows:

"(g) (1) The widow and every surviving divorced mother (as defined in section 416(d) of this title) of an individual who died a fully or currently insured individual, if such widow or surviving divorced mother—

"(A) is not married,

"(B) is not entitled to a widow's insurance benefit,

"(C) is not entitled to old-age insurance benefits, or is entitled to old-age insurance benefits each of which is less than three-fourths of the primary insurance amount of such individual,

"(D) has filed application for mother's insurance benefits, or was entitled to wife's insurance benefits on the basis of the wages and self-employment income of such individual for the month preceding the month in which he died,

"(E) at the time of filing such application has had in her care a child of such individual entitled to a child's insurance benefit, and

"(F) in the case of a surviving divorced mother—

"(i) at the time of such individual's death (or, if such individual had a period of disability which did not end before the month in which he died, at the time the period began or at the time of such death)—

"(I) she was receiving at least one-half of her support as determined in accordance with regulations prescribed by the Secretary, from such individual, or

"(II) she was receiving substantial contributions from such individual (pursuant to a written agreement), or

"(III) there was a court order for substantial contributions to her support from such individual,

"(ii) the child referred to in subparagraph (E) is her son, daughter, or legally adopted child, and

"(iii) the benefits referred to in such subparagaph are payable on the basis of such individual's wages and self-employment income,

shall (subject to subsection (s) of this section) be entitled to a mother's insurance benefit for each month, begin-

Sections 402(d) (1) and (2) which provide for children's insurance benefits.[2]

Erma Hall's application indicated that wage earner had not previously been

ning with the first month after August 1950 in which she becomes so entitled to such insurance benefit and ending with the month preceding the first month in which any of the following occurs: no child of such deceased individual is entitled to a child's insurance benefit, such widow or surviving divorced mother becomes entitled to an old-age insurance benefit equal to or exceeding three-fourths of the primary insurance amount of such deceased individual, she becomes entitled to a widow's insurance benefit, she remarries, or she dies. Entitlement to such benefits shall also end, in the case of a surviving divorced mother, with the month immediately preceding the first month in which no son, daughter, or legally adopted child of such surviving divorced mother is entitled to a child's insurance benefit on the basis of the wages and self-employment income of such deceased individual."

This form of the statute thus clarifies the one under which plaintiff originally applied, and liberalizes the alternatives for a surviving divorced mother, chiefly by adding (II) and (III) under (F) (I).

2. These sections currently read as follows: "(d) (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or curerntly insured individual, if such child—

"(A) has filed application for child's insurance benefits,

"(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, and

"(C) was dependent upon such individual—

"(i) if such individual is living, at the time such application was filed,

"(ii) if such individual has died, at the time of such death, or

"(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs—

"(D) the month in which such child dies, marries, or is adopted (except for adoption by a stepparent, grandparent, aunt, uncle, brother, or sister subsequent to the death of such fully or currently insured individual),

"(E) the month in which such child attains the age of 18, but only if he (i) is not under a disability (as so defined) at the time he attains such age, and (ii) is not a full-time student during any part of such month,

"(F) if such child was not under a disability (as so defined) at the time he attained the age of 18, the earlier of—

"(i) the first month during no part of which he is a full-time student, or

"(ii) the month in which he attains the age of 22, or

"(G) if such child was under a disability (as so defined) at the time he attained the age of 18, the third month following the month in which he ceases to be under such disability or (if later) the earlier of—

"(i) the first month during no part of which he is a full-time student, or

"(ii) the month in which he attains the age of 22.

Entitlement of any child to benefits under this subsection on the basis of the wages and self-employment income of an individual entitled to disability insurance benefits shall also end with the month before the first month for which such individual is not entitled to such benefits unless such individual is, for such later month, entitled to old-age insurance benefits or unless he dies in such month.

"(2) Such child's insurance benefit for each month shall, if the individual on the basis of whose wages and self-employment income the child is entitled to such benefit has not died prior to the end of such month, be equal to one-half of the primary insurance amount of such individual for such month. Such child's insurance benefit for each month shall, if such individual has died in or prior to such month, be equal to three-fourths of the primary insurance amount of such individual."

The statute is, as pertinent here, essentially the same as that under which application of plaintiff was made.

married. She was awarded mother's insurance benefits of $66.40 monthly and child's insurance benefits of $66.40 monthly for each of the two children for the months of May, 1964, through December, 1964. This added up to the family maximum for 1964 of $199.20 monthly. The mother's insurance benefits were terminated in January of 1965 because of Erma's remarriage. But increased benfeits of $75.50 monthly were paid to each of the two children (for a monthly total of $151.00) for the months of January, 1965, through October, 1965. The family maximum for that period under the 1965 Social Security Amendments was $213.20 per month.[3]

Meanwhile, plaintiff did not learn of the wage earner's death until June, 1965. Then she applied that same month under Sections 402(d) (1) and (2), Title 42 U.S.C.A., for children's benefits for her two sons. She was awarded retroactive benefits of $31.10 for each son for each month of the period from January, 1965, through May, 1965, a total of $62.20 monthly, constituting the difference between the family maximum of $213.20 and the $151.00 received monthly during that period by Erma's children. For the months beginning with her application in June, 1965, plaintiff was awarded $53.30 on behalf of each child or a total of $106.60 per month, half of the family allowance. For the months June, 1964, through December, 1964, when the $199.-20 monthly paid to Erma and her children equaled the family maximum, plaintiff was awarded no benefits.

Plaintiff has consistently contended throughout the administrative process and in this action that, since Section 402(j) (1), Title 42 U.S.C.A., provides that an application for benefits may be retroactively effective for as much as 12 months prior to the month in which

the application was filed,[4] her sons are entitled to ⅖ of the $199.20 monthly family maximum for June, 1964, through December, 1964, and ½ of the $213.30 monthly family maximum for January, 1965, through May, 1965. (The difference in fractional amounts is accounted for by the fact that Erma herself received ⅕ in widow's benefits until they ceased with her remarriage in December, 1964.)

Defendant cited in support of his decision so much of Section 402(j) (1), Title 42 U.S.C.A., which provides:

"Any benefit under this title for a month prior to the month in which application is filed shall be reduced, to any extent that may be necessary, so that it will not render erroneous any benefit which, before the filing of such application, the secretary has certified for payment for such prior month."

Defendant contends that it was the intent of Congress that Section 402(j) (1) should be applied as it was in the decision under review. Defendant relies in part on a part of H.R. No. 2526, 79th Congress, p. 24; Sen. Report No. 1862, 79th Congress, P. 32, U.S.Code Cong. Service 1946, p. 1542, which reads as follows:

"Because there are maximum limitations on the total amount that may be paid in monthly benefits on the basis of one wage record, if one dependent or survivor files his claim a month or more after other members of the family, payments of benefits retroactively for those months sometimes results in total family benefits in excess of the maximum. Such overpayments require later adjustments in the benefits of each beneficiary until the entire amount of the excess is repaid. To eliminate unnecessary work in re-

---

3. Family maximums are provided for by Section 415. Title 42, U.S.C.A. The amounts thereof are not herein disputed.

4. The section reads in part:
"An individual who would have been entitled to a benefit under subsections (a)— (g) or (h) of this section for any month

after August 1950 had he filed application therefor prior to the end of such month shall be entitled to such benefit for such month if he files application therefor prior to the end of the twelfth month immediately succeeding such month."

adjusting payments which were correct when made, this section also provides that when retroactive payments are to be made * * * only that amount shall be paid which will not make incorrect any monthly benefit paid on the basis of the same wage record."

█ For the defendant the Appeals Council further determined that, with regard to the months of June, 1964, through December, 1964, plaintiff's sons were not to be deemed in any way *entitled* to any amounts by virtue of Section 402(j) (3), Title 42 U.S.C.A., which reads:

"An individual shall be deemed to have waived such entitlement for any such month for which such benefit would, under the second sentence of paragraph (1), be reduced to zero."

In so holding, the Appeals Council found it unnecessary to make a finding whether the payments received by Erma J. Hall and her children prior to June 1965 were received "without fault" and under conditions where repayment would be contrary to purposes of the subchapter of the Act here involved or against equity and good conscience as deemed necessary by Section 404(b), Title 42 U.S.C.A., as it read at the time of the secretary's decision:

"There shall be no adjustment or recovery by the United States any case where incorrect payment has been made to an individual who is without fault (including payments made prior to June 1, 1940), and where adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

It was therefore the conclusion of the Appeals Council that:

"Since, as a result of this decision, there is no overpayment to Mrs. Cozad [Erma J. Hall] for the months of June 1964 through May 1965, the issue of waiver of adjustment of any overpayment to her for these months is not before the Appeals Council."

Accordingly, the Appeals Council reversed the decision of the hearing examiner, who had found that there had been an overpayment, but that Erma J. Hall was "without fault" in causing the overpayment and recovery thereof would defeat the purposes of Title II of the Social Security Act. The conclusion of the hearing examiner was that, since the term "waiver" in section 402(j) (3), *supra,* was misused, plaintiff's sons were entitled to amounts equal to two-fifths of the family maximum from June 1964 through December 1964 and one-half of said maximum for January 1965 through May 1965. This conclusion was also reversed by the Appeals Council. The decision of the Appeals Council is the "final decision of the Secretary" within the meaning of Section 405(g), Title 42 U.S.C.A. That decision can be affirmed by this Court only if the following conditions are met: (1) the hearing procedures were fair and lawful; (Jacobson v. Folsom (S.D.N.Y.) 158 F.Supp. 281, 284) (2) evidence was received on the material factual issues; (Fenix v. Celebrezze (W. D.Mo.) 243 F.Supp. 816) (3) the findings of fact are supported by substantial evidence; (Celebrezze v. Bolas (C.A.8) 316 F.2d 498, 500–501) (4) the findings of fact are sufficient to resolve the crucial issues; (Hayes v. Celebrezze (C.A. 5) 311 F.2d 648, 654) (5) the correct legal standards were applied in determining the ultimate issues; (Ferran v. Fleming (C.A.5) 293 F.2d 568, 571) (6) all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case; (Marion v. Gardner (C.A.8) 359 F.2d 175) and (7) it appears that in finding the facts that the claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings. (Sec. 7(c) Adm.Proc.Act. Sec. 556(d), Title 5 U.S.C.A.; Jaffe, Administrative Law: Burden of Proof and Scope of Review, 79 Harvard L.Rev. 914; Woodby v. Immigration & Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17

L.Ed.2d 362 (1966)). Pollard v. Gardner (W.D.Mo.1967) 267 F.Supp. 890, at 903.

■ It appears at the outset on consideration of the first of these seven requisites that the hearing procedures employed by the hearing examiner were neither fair nor lawful. He recognized that the issues presented by plaintiff's application and contentions would affect the interests of Erma J. Hall and her children. Therefore, he issued an order under date of July 20, 1966, joining Erma J. Hall on her own behalf and as representative for Rebecca D. Hall and Robert L. Hall, Jr., as a party to the hearing. Then, however separate hearings were held, one for plaintiff on May 25, 1966, in Kansas City, Missouri, and one for Erma J. Hall on December 1, 1966, in Omaha, Nebraska. Furthermore, a letter of record to plaintiff from the hearing examiner dated December 2, 1966, reveals that plaintiff was given no prior notice of the hearing involving Erma J. Hall. That letter reads as follows:

"December 2, 1966

"Dear Mrs. Burrow:

"We held a hearing in Omaha, Nebraska. Mrs. Cozad [Erma J. Hall] has moved back to the area so we held a hearing ourselves. I am fully aware you were not notified of the hearing involving Mrs. Cozad. However, this case will have to be decided on an issue of law and I think that the facts can only be decided one way. I am going to have to do considerable research on the case and therefore, do not expect a decision within the next thirty days * * *."

The erroneous conclusion without hearing that the case involved only a question of law, and the lack of notice, were effective, not only to deprive plaintiff of right to cross-examination as accorded her in administrative proceedings by Section 556(d), Title 5 U.S.C.A., but also to deprive plaintiff of the opportunity to present rebuttal testimony which she may have desired to offer upon the factual issues.[5]

■ That evidence was not fully taken upon the material factual issues to meet the second requisite outlined above resulted from the failure to utilize fair and lawful hearing procedures. In the hearing held May 25, 1966, the plaintiff was unable to testify or present other evidence whether Erma J. Hall, at the time of her application for benefits, had any knowledge of the existence of plaintiff and her two sons. At pages 48–49 of the transcript there appears at least some of plaintiff's information upon that issue. There plaintiff related to the hearing examiner that her sister Patricia Lowder had visited deceased and Erma, while they were living in California. According to plaintiff, Patricia Lowder reported to plaintiff that the deceased had "asked about the boys." This colloquy then ensued between the hearing examiner and plaintiff:

"Q. Was his wife present at that time or don't you know?

"A. I could not swear that she was present at the time.

&ast; &ast; &ast; &ast; &ast; &ast;

"A. Well, I do know that they were married in August and he wasn't divorced until December. Course, that's possible that she didn't know that too, but still and all, I don't think it's right for these kids to be punished on this because its certainly not their fault."

While such testimony alone given out of the presence of Erma Hall may not be substantial evidence which would support a finding that Erma J. Hall knew of the existence of plaintiff and her sons, cf. Willapoint Oysters v. Ewing (C.A.9, 1949) 174 F.2d 676, *cert. den.* 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527, *reh. den.*

---

5. The cited section reads in part: "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."

339 U.S. 945, 70 S.Ct. 793, 94 L.Ed. 1360; So. Stevedoring Co. v. Voris (C.A.5, 1951), 190 F.2d 275, nevertheless, it indicates that substantial evidence on the issue might exist, and might even be elicited on cross-examination of the adverse claimant. Therefore, the right of cross-examination of the adverse claimant became critically important to the plaintiff herein.

In the hearing on December 1, 1966, of which plaintiff was given no prior notice, Erma J. Hall testified that as early as September, 1964, she had knowledge of plaintiff and her two sons:

"Q. When did you receive your first inkling that he might have been married before?

"A. The Veterans sent me—I sent my file in. Filed for Veterans and they sent me back a paper and Bob had been previously married and that he had two children by this marriage, and that I should send for a copy of the divorce decree. (p. 67 of transcript.)

Erma further stated (the remark not being elicited by the hearing examiner):

"A. I don't know if I should have contacted social security. I figured by that time they knew if the Veterans knew it, then they surely must have known it, but I guess they didn't from what—" (p. 70)

Yet no inquiry was made into whether there might be any other reason for the failure to "have contacted social security". Even though plaintiff herein elected not to be represented by counsel, it cannot be assumed that a cross-examiner, layman or lawyer, and a fair hearing officer would not have inquired whether the failure might have stemmed from certain knowledge of an obligation to notify the Social Security Administration, from a recognition that plaintiff's sons' rights under the Social Security Act would be equal to hers and those of her children, or from a recognition that plaintiff's rights might even work a diminution of her own and her children's. In perhaps dramatic departure from the course that such fair or adverse cross-examiner would have pursued, the hearing examiner then proceeded to examine partially in Erma's interest whether recovery of any overpayment would defeat the purposes of the Act by asking:

"Q. * * * Now, I would presume that you need all of the social security money you are getting for the support of your children, is that correct?

"A. I use it, yes.

"Q. I mean you don't have—Do you have any assets? Do you have two or three million dollars in the bank?

"A. No, I don't have a bank account, either.

"Q. In other words, do you live from month to month like everybody else, is that right?

"A. Yes, we do.

"Q. The reason I asked you this and I'll tell you. If I do hold there's an overpayment, I do have the authority to waive the overpayment, you see. These past payments that you've had provided, if I find, Number 1, that you are without fault, then I've got to find that recovery of overpayment would defeat the purpose of Title II of the Act or that it would be against equity to ask for recovery * * *"

Thereafter, on December 29, 1966, it was recorded that the hearing record was reopened for the admission of, *inter alia* exhibits 30, 31, and 32, purporting to represent the type of cards and folders received by Erma J. Hall during the time she and her sons benefitted under the Act before plaintiff's application thereunder.[6]

6. Other exhibits were admitted by the same re-opening. None of the others, however, appear as prejudicial to the interests of plaintiff as the ones here specifically mentioned, though to be sure, it appears from the record that they were admitted without notice or opportunity to object or cross-examine.

Again, nothing appears to indicate that plaintiff was notified of the opening of the record, or given any opportunity to examine the exhibits, or to object to their admission. While, furthermore, it is true that Erma J. Hall testified that she had received two cards from the social security office, one for change of address and one regarding change in employment conditions, there is no identification of Exhibits 30, 31, or 32 by her as being the type of card which she received. Furthermore, there is no information anywhere of record which this Court can find to indicate that the folders exhibited were all of the documents of the type which would have been mailed or given to a beneficiary of Erma J. Hall's classification during the period between May, 1964 and June, 1965. The cards purport to show that Erma was not informed during that time that she should report such changes as she learned with regard to plaintiff and her sons to the administration. But no such finding adverse to plaintiff could be based on such "evidence" as this. See Glendenning v. Ribicoff (W.D.Mo.) 213 F.Supp. 301, and authorities therein cited. Furthermore, cross-examination into the status and contents of the exhibits may well have forestalled the admission of exhibits of this kind; but cross-examination itself was forestalled by the hearing examiner's letter of December 2, 1966.

■ Nevertheless, the hearing examiner made findings of fact, in part, as follows:

"At the time of the marriage, Erma Jane Hall was not aware that Robert L. Hall had ever been previously married or that he had had any children. That they were married in a legal ceremony and Erma J. Hall, in good faith, at all times believed that she was the legal wife of Robert L. Hall. That as a result of this marriage they had two minor children, Robert L. Hall, Jr. and Rebecca D. Hall.

"That after the decedent died in May 1964, Erma Hall Cozad filed an application for widow's benefits and also benefits for her two minor children. That at the time she filed this application she was still unaware that her husband had ever been previously married or had any children.

"That subsequent to the execution of the social security applications for benefits, Mrs. Cozad learned, in about September 1964, that her husband had been previously married. *At that time she was not aware that there were any minor children and the only information she had was that there had been a previous marriage.* (Emphasis added.)

"The Examiner further finds that Mrs. Cozad was given certain documents by the Social Security Administration. These documents advised her to notify the Social Security Administration in the event of certain contingencies occurring. These were: any change in custody, any work changes, and any changes in her marital documents. There was nothing in any of the documents given to Mrs. Cozad which advised her to notify the Social Security Administration in the event any of the statements in her applications proved to be incorrect.

"Mrs. Cozad also believed that when she found out from the Veterans Administration that her husband had been previously married that since this was a government agency the same as the Social Security Administration, that the Social Security Administration must also know that there was a previous marriage."

The findings were clearly contrary to Erma J. Hall's admission that she had learned of the existence of plaintiff's sons, as well as of plaintiff, by means of the September 1964 communication from the Veterans' Administration. In view of the issues not fully explained in the hearing involving Erma J. Hall and the admission of documents not proven to be material to the case, it can hardly be said that the findings quoted above were supported by substantial evidence.

■ Further these findings would not meet the fourth condition necessary to the upholding of the Secretary's decision, because they are not sufficient to resolve the crucial issue of the possible fault of Erma J. Hall. As noted above, the Appeals Council declined to adopt the findings of the hearing examiner, on the grounds that Sections 402(j) (1) and 402 (j) (3), *supra*, completely controlled the matter to the exclusion of Section 404 (b). The Appeals Council also declined to make a finding on whether Erma J. Hall was "without fault" in continuing to receive monies without notifying the Social Security Administration of the information she had acquired, or a finding whether recovery thereof would be against equity and good conscience.

■ The decision of the Appeals Council to avoid the issue of Erma's fault shows that the fifth standard requisite to affirmation was not met, namely, the correct legal standards were not applied. Nothing in Section 402(j) (1), nor in the indications of Congressional intent behind it, would support the conclusion that it is to be read to the exclusion of Section 404(b). It is a settled rule of construction that two sections of the same

act are to be regarded as simultaneous expression of legislative intent, and are therefore read together and construed to be consistent with each other. See 82 C.J.S. Statutes § 385(b); 50 Am.Jur. Statutes § 348, Textile Mills Securities Corp. v. Commissioner of Internal Revenue, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249. It is therefore concluded that these two sections are to be read together, and that the applicability of Section 402(j) (1) to cases involving possible fault in the continued reception of overpayment comes into play only if it is found that there was no fault in that said reception. Congress in enacting Section 402(j) (1) must not have intended the section indiscriminately to cover cases where beneficiaries of the Act continue to receive what they know to be overpayments in disregard of the rights of other potential beneficiaries.[7]

Furthermore, in the administrative proceedings under review no inquiry apparently was made whether Erma J. Hall actually qualified as wage earner's widow within the meaning of Sections 402 (g) (1) and 416(c).[8] Finally, we note that there were no regulations of defendant applied upon the crucial issues herein

---

7. Section 404.402, Title 20, C.F.R., provides that adjustment because of the family maximum takes precedence over all other adjustments, including adjustment because of error. Thus, in no case does the scheme of the Social Security Act, as implemented by the regulations of defendant, permit benefits to be distributed in excess of the family maximum. If such were not the case, adjustment because of, *inter alia*, error in payment could possibly take precedence over adjustment on account of the family maximum, and a subsequent claimant could be awarded the family maximum even without retroactive divestment of the same from a previous claimant on a finding of fault. This is specifically prohibited, however, by Section 402(j) (1). Where the family maximum is the unexceedable limit, however, it would not be reasonable to conclude that a prior benefit received "with fault" should deprive a subsequent rightful claimant of his share of the family maximum. In order, however, to award a subsequent rightful applicant his

correct share of the family maximum, it would be necessary to find that a previous recipient was "with fault," at least with regard to those benefits of which he is divested in favor of the subsequent claimant. It is held here, however, in a case like the one at bar, the family maximum can be exceeded, at least momentarily.

8. It would appear that Erma J. Hall would qualify as the deceased's wife at the time of his death from section 595.19 of the Iowa Statutes, which reads that marriages shall be void

"4. between persons either of whom has a husband or wife living, but, if the parties live and cohabit together after the death or divorce of the former husband or wife, such marriage shall be valid."

There is a paucity of factual evidence surrounding the movings and times of separation and reunion of the deceased and Erma J. Hall, however, so that the record is not completely clear with regard to this matter.

so that any finding on the sixth criterion is obviated.[9]

█ The primary burden upon plaintiff to prove her case by more than a preponderance of the evidence, does not affect the rulings made hereinabove.

█ It is thus concluded that findings on the issues of "without fault" and whether recovery of overpayments would have been against equity and good conscience were necessary to resolve the crucial issues decided by the defendant; that neither finding was made and that it was impossible to make such a finding supportable by substantial evidence upon the record as it was herein certified to this Court. The burden of proving that the reception by Erma Hall and her family of monies in excess of their proportionate share of the family maximum was not "without fault", however, did not properly fall on plaintiff. In proceedings involving the alleged overpayee, it is the recipient of the overpayment who is required to bear the burden of proving herself without fault. Sturdevant v. Celebrezze (E.D.Pa.) 239 F.Supp. 745; Price v. Folsom (D.N.J.) 168 F.Supp. 392, affirmed (C.A.3) 280 F.2d 956, cert. den. 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed. 695. Between the parties to this suit, therefore, it was the adverse claimant and the defendant, rather than plaintiff, who should bear the burden of proving (1) that the adverse claimant was "without fault" in accepting the overpayment, and (2) that it would be against equity and good conscience or defeat the purpose of the Act to require the said adverse claimant to repay the monies. Defendant's hearing examiner properly construed the applicable statute by concluding the recipient could not be compelled to repay any overpayment if claimant was without fault and if it would defeat the purpose of the Act or be against equity and good conscience to require the overpayment. Section 404(b), Title 42 U.S.C., clearly reads that both the conditions of lack of fault, on the one hand, and equity or retention in keeping with the purposes of the Act, on the other, must be present.[10] As a consequence of his disregarding the issue, however, the hearing examiner himself failed not only properly to accord the plaintiff her rights of confrontation and cross-examination but also by the same defect to take sufficient evidence on whether the adverse claimant, Erma Hall, was without fault in receiving and retaining the overpayment. As a result, the only item of properly admitted evidence on the issue was that Erma Hall knew of the existence of plaintiff and her two sons as early as September, 1964. Thus, even though defendant had ample opportunity to produce and receive evidence upon this issue, it did not take the substantial evidence of faultlessness of the adverse claimant that would have been necessary to support the final decision of the defendant in this case. In fact, by virtue of a one-sided and unfair examination of the adverse claimant and a simultaneous depriving plaintiff of her statutory right to cross-examine, the defendant thwarted the production of substantial evidence on the issue.

9. The regulation at Title 20, Chapter III, C.F.R. 404.919, was applied in joining the parties. This was done correctly in that parties to the hearing are therein provided to be "parties to the initial determination and reconsideration." The hearing examiner apparently did not heed, however, Title 20, Chapter III, C.F.R. 404.923, requiring 10 days' prior notice to the parties to a hearing, allowing the parties thereto to serve written objections to the time and place thereof, and the hearing examiner to change such time and place upon good cause shown.

10. The 1968 amendments to the Social Security Act make this even clearer by this phrasing:
"In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault *if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.*" (Emphasis added.) P.L. 90–248 § 152(b), 81 Stat. 821. The effective date applies to benefits entitled to and paid in or after January 1968.

Plaintiff, therefore, has clearly brought herself within the terms of Sections 402(d) (1) and (2), entitling her to children's benefits for her two sons. Defendant, on the other hand, has not proved overpayment to an adverse claimant without fault to bring Section 402(j) (1), Title 42 U.S.C., which allows the reduction of benefits of subsequent family claimants in order not to render erroneous awards to prior family claimants, into proper applicability in this case. It is therefore

Ordered that plaintiff's motion for summary judgment be, and the same is hereby, granted. It is further

Ordered that defendant's motion for summary judgment be, and the same is hereby, overruled and denied. It is further

Ordered and adjudged that the decision of the defendant Secretary be, and the same is hereby, reversed and plaintiff is awarded benefits to constitute ⅖ of the family maximum of deceased wage earner Robert L. Hall for the months from June 1964 through December 1964, and ½ of the family maximum of said wage earner from January 1965 through May 1965 without prejudice to her properly-payable benefits under applicable laws from that date forward.

In reaching this decision, this Court does not make any ruling with regard to the presence or absence of fault in the adverse claimant, Erma J. Hall. Subsequent proceedings may or may not indicate that such fault existed. It is here held only that the proof does not meet the burden of proof by substantial evidence that the adverse claimant, Erma J. Hall, was without fault, which is a prerequisite to a refusal to award 12-month retroactive benefits to plaintiff requested by her as her portion of the family maximum. It is held that it is the defendant's duty and obligation first to determine whether the prior claimant is without fault before subsequently refusing benefits (or portions thereof) under Section 402(j) (1) to a subsequent rightful claimant. It will be presumed that there will be no subsequent requirement that Erma J. Hall make repayment. If subsequent administrative proceedings should show her to be without fault, such failure to require repayment or finding of faultlessness will have no effect on the present decision. Plaintiff's award of retroactive benefits in the share to which she was originally entitled, if it results (as it now does) in a composite award to the two families in excess of the family maximum, shall not thereby be defeated. Since plaintiff's lack of fault was resolved prior to that of the adverse claimant, plaintiff now stands in the position of one who has received an overpayment without fault and where it would defeat the purposes of the Act to require repayment.

Since plaintiff asks only for a fraction of the family allowance, no ruling is required on her possible claim for all the family allowance.