**Ruby J. BURROW, Plaintiff-Appellee,**

v.

**Robert H. FINCH, Secretary of Health,**
**Education and Welfare, Defendant-**
**Appellant.**

**No. 19802.**

United States Court of Appeals,
Eighth Circuit.

Sept. 14, 1970.

York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

Thomas J. Press, Atty., Dept. of Justice, Washington, D. C., for appellant, William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., Calvin D. Hamilton, U. S. Atty. (former), Kansas City, Mo., and Kathryn H. Baldwin and Robert M. Heier, Attys., Dept. of Justice, Washington, D. C., on the brief.

Sol M. Yarowksy, Kansas City, Mo., for appellee, and filed brief.

Before BLACKMUN,* GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

The Secretary of H.E.W. has filed an appeal from the judgment of the district

---

* Mr. Justice Blackmun, who sat on this panel as a member of this Court before his elevation to the United States Supreme Court, did not participate in the consideration or decision of this case.

court which awarded retroactive social security benefits to late filing claimants. The effect of the judgment is to exceed the maximum amount, based upon the decedent's wage earning record, allotted under the Act to the deceased wage earner's "family." The benefits had already been totally (for some months) and partially (for other months) depleted by payments to prior "family" claimants. We reverse.

The facts are fully set forth in the district court's opinion, 299 F.Supp. 807, and only the essential data needed to understand the legal issues are repeated here. In 1949 the deceased wage earner, Robert L. Hall, married the plaintiff (now Ruby Burrow). Their union produced two sons. In May 1953 the decedent abandoned his first family and Ruby never heard of him again. In August 1953 Robert Hall married Erma J. Hall (now Erma Cozad). The second marriage took place prior to the final decree of divorce, which Ruby obtained in December 1953. In May 1964 the wage earner died, still married to Erma, leaving her with two minor children born of their union. In July of 1964 Erma applied for benefits for herself [1] and on behalf of her two children. Erma and the two children received $66.40 each for a total of $199.20, the maximum benefits allowable against the wage earner's record under the Act. 42 U.S.C.A. §§ 403(a) and 415(a) (Table-Column V).

In January 1965 Erma remarried which, pursuant to § 402(e) of the statute, divested her of entitlement to benefits. At the same time the statutory family maximum on the wage earner's record was amended and increased to $213.20 a month. Each of Erma's children thereafter received $75.50 leaving an unused portion of the new benefits at $62.20 per month.

In June 1965 Ruby Burrow first learned of the wage earner's death. She then filed an application for benefits on behalf of her two sons, also claiming against the wage earner's account. The Secretary determined that hers was a valid claim, and since June 1965 Ruby's sons have shared equally with Erma's children. The four children are currently each receiving $53.30. These payments are not in question here.

Under § 402(j) (1) the Secretary is authorized, subject to certain conditions, to award benefits retroactively for twelve months from the date of application. The benefits from June 1964 through May 1965 are the subject matter of the present litigation.

The Secretary initially denied benefits to Ruby's sons for the period of June 1964 through December 1964 on the ground that the family maximum in effect at that time had already been depleted. The last sentence of § 402(j) (3) provides: "An individual shall be deemed to have waived such entitlement [to retroactive benefits] for any such month for which such benefit would, under the second sentence of paragraph (1), be reduced to zero."

From the period of January 1965 through May 1965 the Secretary awarded $31.10 to each of Ruby's sons, which was the amount remaining in the family maximum not previously paid out to Erma's children. In doing so the Secretary relied upon the second sentence of 42 U.S.C.A. § 402(j) (1) which provides that any retroactive benefit under the Act must be reduced "to any extent that may be necessary, so that it will not render erroneous any benefit which, before the filing of such application, the Secretary has certified for payment * * * ''

Mrs. Burrow requested an administrative rehearing on the retroactive benefits. She contended, as she does here, that her sons are entitled to ⅖ths of the family maximum from June 1964 to December 1964. She also contends that they are entitled to their full share of one-half of the maximum from January through May 1965. Her contention is

---

1. Even though Erma's marriage was invalid, she was still entitled to widow's benefits under the Act. 42 U.S.C.A. § 416(h) (1) (B).

based upon the language of 42 U.S.C.A. § 404(b) which provided at the time this case arose:

"There shall be no adjustment or recovery by the United States in any case where incorrect payment has been made to an individual who is without fault (including payments made prior to January 1, 1940), and where adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." [2]

The hearing examiner reopened the proceedings and held evidentiary hearings to determine whether or not Erma was at "fault" in receiving the overpayments. On the basis of these hearings he determined that there had been overpayments to Erma under § 404(b) and therefore Ruby's sons should be granted full retroactive payments. The examiner also found, however, that Erma received these overpayments "without fault" and to recover them would defeat the purpose of the Act.[3] He therefore ordered that no retroactive reduction be made in the award to Erma or her children. The effect of this decision was to authorize benefit payments in excess of the family maximum benefits set by statute. The Appeals Council [4] reversed the decision,

*sua sponte,* and reinstated the Secretary's original award.

Ruby filed suit to review the Secretary's final decision and the district court reversed the Appeals Council. In doing so the district court held that the procedure and the standard of law applied at the evidentiary hearings conducted by the examiner were incorrect. The court further held that the findings of the examiner violated other legal standards.

The district court concluded that it was the duty of the Secretary to first determine whether a prior claimant was without fault (under § 404(b)) before subsequently refusing benefits to a late-filing rightful claimant (under § 402 (j)). The district court held, however, that even should it be subsequently found, in a properly conducted evidentiary hearing, that Erma was without fault and not required to return the overpayment, Ruby is nevertheless a rightful claimant and cannot be denied recovery of her benefits. The district court reached this result, even though the resulting benefits paid would be in excess of the family maximum, since the Secretary failed to prove that Erma was not "without fault." It is this holding with which we disagree.

**2.** This section has been amended to read:
"In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." Act of Jan. 2, 1968, Pub.L. No. 90–248, § 152(b), 81 Stat. 860, 861.
The reason for the amendment is not relevant here:
"The new subsection (b) of section 204 of the act broadens the Secretary's authority to waive adjustment or recovery of overpayments. Under present law, a condition for waiving adjustment or recovery of an overpayment is that the overpaid person be without fault; waiver is not authorized if the overpaid person is at fault even though the person from whom adjustment or recovery is sought is without fault. The new

subsection (b) authorizes the Secretary to waive adjustment or recovery of an overpayment from any person who is without fault, even where he is not the overpaid person and the latter is at fault." S.Rept. No. 744, 90th Cong., 1st Sess. p. 257, U.S.Code Cong. & Admin.News 1967, p. 3096.

**3.** As it read at the time in question, 20 C.F.R. § 404.508 provided:
" 'Defeat the purpose of Title II', for purposes of this subpart, means defeat the purpose of benefits under this title, i. e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs."

**4.** The decision of the Appeals Council is the "final decision of the Secretary" under 42 U.S.C.A. § 405(g).

We think it clear that the maximum family allowance available to beneficiaries under the tables of § 415 constitutes the limit against which all claimants may file. Although we reject the Secretary's contention that § 402(j) and § 404(b) are not to be interpreted in conjunction with one another, nevertheless the two sections of the Act should not be so construed as to violate the maximum family benefits authorized. A claimant has no right to social security benefits apart from those authorized by statute. Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). All rights depend solely upon the statutory scheme. Guarino v. Celebrezze, 336 F.2d 336, 338 (3 Cir. 1964). See also 20 C.F.R. §§ 404.403, 404.406. Equitable principles cannot increase benefits not otherwise provided within the Act itself. Congressional intent is clear that no more than the maximum benefit authorized can be paid out. Section 402(j) (3), previously set forth, additionally provides that an individual shall be deemed to have waived any entitlement for any such month where a prior benefit has been paid out so as to reduce the claimed benefit to zero.

It is upon the latter basis, and the second sentence of § 402(j) (1), that the Secretary urges that a late filing claimant is estopped from any readjustment of previous benefits paid. As set forth, infra, § 402(j) (1) requires that any retroactive benefit to a late filing claimant be *reduced* "to any extent that may be necessary, so that it will not render erroneous" any benefit previously paid for such prior month. We agree that readjustment of prior benefits can-

not be rendered erroneous by the fact alone that an additional claimant later becomes entitled to benefits. The statute clearly so provides. The legislative history of the Act enunciates the design of the provision "[t]o eliminate unnecessary work in adjusting payments which were *correct* when made * * *". H. Rept. No. 2526, 79th Cong., 2d Sess., p. 24; S. Rept. No. 1862, 79th Cong., 2d Sess., p. 32; U.S.Code Cong.Serv. 1946, p. 1542. (Emphasis ours.) There is nothing in these provisions that requires the Secretary to prove that the prior claimant was "without fault" in the overpayment (as provided under § 404 (b)) when dealing with the application of late filing claimants. The examiner and the district court construed § 402(j) and § 404(b) so as to place on the Secretary the burden of proving the prior claimant to be "without fault" when entertaining the application of the late filing claimant. The essential difficulty with this construction is that it may inevitably lead to a result not authorized by the Act, as it did here, in the award of more than the family maximum to all claimants. This interpretation places the Secretary in the unenviable position of proving nonfault of the earlier claimant in one proceeding, and then in a separate proceeding to recover the overpayment, proving the "fault" of the same claimant under § 404(b).[5] In the event the Secretary fails in both proceedings, as the district court recognizes to be possible here, the benefits would clearly exceed the maximum authorized by statute. There is nothing in the Act or its history which demonstrates that Congress intended such an anomalous result.

---

5. There are cases to the effect that the burden of proving lack of fault, or proving that recovery of overpayments would be against equity and good conscience or would defeat the purpose of the Act, is on the overpaid beneficiary. Minton v. Celebrezze, 318 F.2d 429, 431 (7 Cir. 1963) ; Sturdevant v. Celebrezze, 239 F.Supp. 745, 748 (E.D.Pa.1965) ; Price v. Folsom, 168 F.Supp. 392, 400 (D.N.J.1958), affirmed 280 F.2d 956 (3 Cir. 1960), cert. denied 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961) ; Irvin v. Hobby, 131 F.Supp. 851, 865 (N.D.Iowa 1955). These cases all arose where the beneficiary asserted a claim against the Secretary. Where the Secretary asserts the claim of overpayment by reason of "fault" under § 404(b), as in this case on remand, there is no logical reason why the party asserting the claim should not bear the traditional burden of proving it. Cf. Tobin v. United States Ry. Retirement Bd., 286 F.2d 480, 483 (6 Cir. 1961).

The district court held that two sections of the same act are to be regarded as simultaneous expressions of legislative intent and are therefore read together and construed to be consistent with each other. 299 F.Supp. at 817. There is much support for the proposition that every clause of an act should be given effect if possible. United States v. Menasche, 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Although dealing with different provisions of the Act, it has been held that the Social Security Act must be read in its entirety and the sections construed together. Kandelin v. Kandelin, 45 F.Supp. 341 (E.D.N.Y. 1942), affirmed sub nom. Kandelin v. Social Security Board, 136 F.2d 327 (2 Cir. 1943). We disagree with the Secretary that §§ 402(j) and 404(b) are totally exclusive. The two sections of the Act are interrelated so as to at least compliment one with another without at anytime violating the maximum benefits authorized by the Act itself. The court's construction should be such as will harmonize and reconcile each part of the act. Brotherhood of Locomotive Firemen and Enginemen v. Northern Pacific Ry., 274 F.2d 641, 646–647 (8 Cir. 1960). We think it only logical, when a recovery or adjustment is made against an overpaid claimant under § 404(b), that a late filing claimant need not be deemed to have waived his rightful benefits. Nor may his claim be so reduced if funds exist within the maximum allotment available for payment. In such cases it is the "fault" of the overpaid claimant which controls the adjustment and not the belated application by an additional beneficiary. When there is application by a late filing claimant, and it is contended that there has been an overpayment of benefits to prior claimants which may have been based upon "fault" of the person overpaid, the Secretary *must* invoke § 404(b). To the extent that any adjustment or recovery is made by the Secretary from the earlier claimants, the late filing claimant may be awarded retroactive benefits in accordance with § 402(j). In the event no ad-

justment or recovery is made by the Secretary, § 402(j) (1) and (3) applies so as to reduce any retroactive benefits in such a manner as not to render erroneous any prior payment or to allow payment of benefits beyond the family maximum authorized by the Act. Thus, even though there be overpayment, if it is done "without fault" of the prior claimant, the late filing beneficiary's payment is governed by § 402(j) (1) and (3).

Under these circumstances, the determination of benefits to be paid in the present case requires further administrative proceedings and the district court should remand the case to the Secretary for such action. Mott v. Secretary, 407 F.2d 59 (3 Cir. 1969); Flake v. Gardner, 399 F.2d 532 (9 Cir. 1968); Moncrief v. Gardner, 357 F.2d 651 (5 Cir. 1966).

### FAULT

The Secretary has argued that a claimant's knowledge at the time of application of the existence of other potential beneficiaries is not equivalent to "fault" under § 404(b). The district court held that "fault" may exist where beneficiaries *continue* to receive overpayments upon after-acquired knowledge of the existence of other potential beneficiaries. We think both interpretations of the Act are incorrect. The regulations in effect at the time in question, 20 C.F.R. § 404.507, defined fault as follows: "What constitutes fault * * * depends upon whether the facts show the incorrect payment resulted from:

"(a) An incorrect statement made by the individual which he knew or should have known to be incorrect;

"(b) Failure to furnish information which he knew or should have known to be material; or

"(c) Acceptance of a payment which he either knew or could have been expected to know was incorrect."

Under this definition we think it clear that if the claimant is found to withhold information or make false, reckless or negligent statements at the time of the application in disregard of

the rights of other beneficiaries, "fault" would exist.[6] We think the questions on the application place any claimant on *notice t*hat if he knows of the existence of potential claimants under a previous marriage they must be disclosed at the time of the original application. On the other hand, we find nothing in the application or the Act itself which places a continuing obligation upon a claimant to notify the Secretary of potential beneficiaries when later discovered by the applicant. Question 30 of the questionnaire reads: "Do you agree to notify the Social Security Administration promptly if any of these events occur and to return promptly any check for benefits received by you if you or any of the children are not entitled to it?" Erma checked the "Yes" blank. The events referred to are listed in a note immediately above question 30:

> "A child's entitlement to benefits ends with *the month before the month* in which the child: (a) attains age 18 (unless the child has a physical or mental impairment which began before age 18, is expected to be long-lasting, and prevents any substantial gainful activity); (b) dies; (c) marries (with certain exceptions where the child is disabled; however, all marriages must be reported); (d) is

legally adopted (unless the adoption is by the child's stepparent, grandparent, aunt, or uncle after the death of the parent on whose record the child's claim is based); or (e) his disability ceases, if he is age 18 or over and receiving benefits as a disabled child."

These are the only facts or events of which the applicant is *notified* that there exists a continuing obligation to report to the Secretary. If the Secretary chose to amend the questionnaire so as to reasonably require a continuing obligation to disclose the discovery of additional claimants, a different situation might be presented. The Social Security Act is a maze of complicated terms and cross references which can easily confuse the practicing attorney, much less the widow and child or other untrained beneficiaries. To impose without notice or clarification upon those who seek its benefits the continuing obligation of disclosure of historical facts, even should they be of some legal significance, would only serve to further confound the labyrinthine details in the minds of those the Act is designed to serve.

We reverse the judgment and remand to the district court with directions to remand the case to the Secretary for further proceedings in accordance with this opinion.

---

6. Question 8 of the application form reads: "Give the following information about each marriage of the deceased, including his marriage to you. Marriage(s) Date & Place; To Whom Married; How Marriage Ended; Marriage Ended—Date & Place." Here Erma listed only the facts as they pertained to her marriage with the wage earner. Question 14 of the application asks: "Was the deceased survived by any unmarried children (including stepchildren, adopted, and illegitimate children): (a) who were under 18 years of age when he died; or (b) who were 18 years of age or older, with a disability that began before age 18?" The question continues: "If *your answer to question 14 is 'Yes', give the following information about each such child.* (If uncertain as to name, date of birth, or whereabouts of any of these children, explain under 'Remarks' on last page.)" (Emphasis in original.) The information requested relates to Full Name of Child, Date of Birth, Relationship to Deceased, and Relationship to Claimant. Erma supplied the information as it related to her children by the wage earner. And just above the claimant's signature is the following declaration: "Knowing that anyone making a false statement or representation of a material fact for use in determining the right to or the amount of Federal old-age survivors, or disability insurance benefits or in determining an individual's disability, commits a crime punishable under Federal law, I certify that the above statements are true."