Joyce C. **GOLDFIN**

v.

Caspar **WEINBERGER.**

Civ. A. No. 73–2730.

United States District Court,
E. D. Pennsylvania.

Aug. 20, 1974.

---

Janet F. Stotland, Philadelphia, Pa., for plaintiff.

William J. McGettigan, Philadelphia, Pa., for defendant.

### MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

This is an appeal pursuant to Section 205(g) of the Social Security Act, 42 U. S.C. § 405(g). Disability benefits to Joyce P. Goldfin were terminated effective the end of January, 1971. The Secretary of the Department of Health, Education and Welfare (HEW) made a final determination that subsequent to the nine months trial work period, Miss Goldfin engaged in substantial gainful employment and was consequently, no longer entitled under the Act to receive disability benefits. The Secretary further determined that overpayments totaling $1752.40 were made from February 1, 1971 through February, 1972 and that since Miss Goldfin was not "without fault," the government was entitled to recover this sum. Procedurally the matter is properly before the court on the issues of (1) whether Miss Goldfin was entitled to disability benefits subsequent to January 1971 and (2) whether the overpayments were "without fault" on the part of Miss Goldfin. Both parties agree that the basic question is whether there is substantial evidence to support the final determinations of the Secretary of HEW. I find that there is substantial evidence and will, therefore, affirm the decision of the Secretary of HEW.

The answer contained, as a part thereof, a certified copy of the transcript of

the record as required, and both parties have moved for summary judgment upon the pleadings, transcript and briefs.

The Secretary of HEW made a determination that the disability ceased in November, 1970, and therefore as provided by 42 U.S.C. § 416(i)(2)(D)(ii) benefits terminated two months thereafter, *viz.*, the end of January 1971. This determination was initially made and Miss Goldfin was so notified by letter dated May 8, 1972 at which time the overpayment of $1752.40 was noted and a refund claimed. (TR–57). She did not initially contest the termination of benefits but filed a "Without Fault" Questionnaire form in which she stated: (TR–92)

I was told I had a 9 month work period. I returned to work but did not work constantly. I thought SSA rules only applied if I worked constantly, therefore I thought I was entitled to benefits.

Miss Goldfin was "disabled" as of October 1, 1965 because of mental illness diagnosed as "Schizophrenic reaction, paranoid type." (TR–50). She applied for disability benefits on December 19, 1968 (TR–49), showing that she last worked at the Philadelphia General Hospital between June and October of 1965 (TR–47).

After starting to receive disability benefits, she obtained a job at Misericordia Hospital in Philadelphia in April, 1969 as a bacteriology technician (TR 40–41), earning $380 per month (TR 67). On December 15, 1969 she took a job at the Osteopathic Hospital in Philadelphia at $440 per month but worked there only until January of 1970 when she took a job at the Pennsylvania Hospital (TR–69) which she thought was a better opportunity (TR 69–70). However, she worked at this latter job only one week, and quit because she could not stand the strain of working with a complex machine. (TR 69). Thereafter her next job was from October 28, 1970 to February of 1971 as a dictaphone typist (TR 28, 72), earning about $1.80 per hour. Her employer was Olston's Inc., a

temporary office job service company. In February of 1971 she took a permanent job as secretary to Dr. England, an associate dean of the Osteopathic Medical College (TR 73). She worked continuously in such capacity until the end of October, 1971 when she was asked to resign because of her illness (TR 30). Her earnings during this period increased from $320 to $720 per month (TR 76). In March of 1972 she started to work three days a week with Johnson-Marsh, a marketing firm, and this job lasted until July of 1972. (TR 31–32). In September, 1972 she entered Temple University as a student, taking regular courses and studying in the dance department to become a teacher. (TR 33). As of the time of the hearing before the Administrative Law Judge on January 10, 1973, she had completed the first semester and was a student in good standing about to start the second semester. The earnings record data indicates that she earned $2963.27 in 1969; $1877.73 in 1970; $4240.80 in 1971; and $168.73 in 1972.

It is crystal clear that during substantial portions of the time that Miss Goldfin was receiving disability benefits she was engaged in substantial gainful employment within the meaning of the act. 42 U.S.C. § 416(i); 42 U.S.C. § 423(d). By whatever methods one computes the allowable "period of trial work" (42 U.S.C. § 422(c)), the nine month period had expired prior to November 1970. It appears that she worked from April 1969 until sometime in January 1970, although at three different jobs, all of which paid substantial wages, and each successive job apparently a better paying job. She returned to work October 28, 1970 as an employee of Olston's, Inc. and continued until late October 1971. At the time that she started to work at Olston's Inc. her trial work period had expired. Consequently, if such work constituted substantial gainful activity, her disability benefits were required to be terminated. Appellant argues in the brief that although her activities after November of 1970

may have been "gainful" they were not "substantial" because eventually she had to resign her job because of her illness. In view of the fact that since November 1970 until the time of hearing in January of 1973 she was either regularly employed or attending college in all but about five or six months, and that at the time of the hearing she was enrolled as a full-time student at Temple University and apparently satisfactorily attending classes, it is hard to see how any conclusion could be reached other than that she was capable of engaging in substantial gainful activity.

A more difficult question is involved in determining whether there is substantial evidence to support the determination that:

> 5. The claimant was at fault for creating the overpayment in the amount of $1752.40. (TR 12)

The Administrative Law Judge correctly notes that two conditions must be met to bar recovery by the government from a beneficiary who has been paid excessive benefits: (1) the recipient must have been "without fault" and (2) recovery would defeat the purpose of the statute or be against equity and good conscience. 42 U.S.C. § 404(b). The Administrative Law Judge concluded that although condition number (2) above would be satisfied, condition number (1) was not. In the "Hearing Decision," the Administrative Law Judge states:

> there is no escaping the fact that the claimant was at fault and her fault caused or contributed to causing the overpayment. (TR 12–13).

No explanation for this conclusion is stated. The entire record has been examined to determine if there is substantial evidence supporting such fact.

20 C.F.R. § 404.507 defines "Fault" as used in "without fault" in 42 U.S.C. § 404(b). The Administration must, in making this determination,

> consider all pertinent circumstances, including . . . age, intelligence, education, and physical and mental condition. What constitutes fault . . . depends upon whether the facts show that the incorrect payment . . . resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

The application for benefits which Miss Goldfin signed provided expressly that she should report promptly any jobs she obtained. (TR 49). In March of 1970, upon an investigation by an "interviewer" she gave specific reports concerning three jobs she held while receiving benefits. (TR 69–70–71). It is, then, indeed difficult to accept a contention that she was unaware of her duty to report taking the job at Olston's, Inc., and in particular taking the job with Dr. England, which she held for approximately 8 months, all during which time she was receiving overpayments.

Her explanation is that because of her mental condition, which was the exact cause of her disability, she remained throughout this period of time, unaware of her obligation to report the job. Appellant said at the hearing she did not remember if she ever reported the jobs at Olston's, Inc., or Dr. England, but would accept the fact that she did not do so (TR 37). She further intimated that she had been "misinformed" by someone from the government that the trial work period had to be a consecutive nine month period (TR 40) before the period of disability would cease. Accepting this as correct, does not, of course, explain her failure to report such work. She did not testify nor indicate that she thought that only after working at a particular job continuously for nine months was there a duty to report that she was working.

 Miss Goldfin may well have believed in "good faith" that she was en-

titled to receive the benefits. "Fault," as used in the statute does not require a showing of "bad faith." Even though there may be an "honest mistake" the recipient may nonetheless be at "fault." Morgan v. Finch, 423 F.2d 551 (6th Cir. 1970); Miller v. Richardson, 333 F. Supp. 218 (S.D.N.Y.1971). Miss Goldfin's "fault" is not in receiving the payments knowing she was not entitled to them (20 C.F.R. § 404.507(c)), but in failing to furnish information which she knew or had reason to have known to be material. (20 C.F.R. § 404.507(b)).

Although there is no direct evidence that she knew and was aware of a duty to report jobs, there is strong circumstantial evidence of such knowledge. The application for benefits form which she filled out and signed expressly so required. (TR 49). After a personal interview by an investigator from the Social Security Administration during or around March of 1970, she filed work activity report forms for three different jobs she had held while receiving benefits. (TR 67, 68, 69).[1] During a considerable portion of the time when she was obtaining overpayments, she held a responsible job as a private secretary. (TR 73 shows the type of work she was doing). She was intelligent as evidenced by regular attendance at Temple University on a State scholarship and her own statements that "she had quite a few grades in high school" (TR 35) and "I am lucky I'm intelligent." (TR 44).

There is authority that when a claimant seeks relief from making a refund of overpayments by reason of being "without fault," the burden of proof shifts to claimant. For a discussion on the burden of proof as to a "without fault" contention, see footnote 5 of Burrow v. Finch, 431 F.2d 486, 491 (8th Cir. 1970). Irrespective of whether claimant must establish that she was "without fault" or the government must present substantial evidence that the beneficiary was not "without fault," the

entire record presents substantial evidence supporting the factual finding that the overpayment resulted from failure to furnish information which Miss Goldfin knew or should have known to be material (20 C.F.R. § 404.507(b)). Consequently, there was "fault" on her part sufficient to preclude her from being exempt from the obligation to repay the benefits incorrectly paid to and received by her.

Appellant's contention that she was without fault because she was misled into believing that the trial work period would not terminate until the conclusion of a continuous period of work for nine months misses the point. The "fault" is not that she knowingly received overpayments, but rather that the overpayments were caused by her knowingly failing to report work activity. She does not claim that she thought she had to file work activity reports only after nine months of continuous work, and in view of the reports she did file, such a contention would be clearly untenable.

Appellant's counsel also argues that the record is deficient and incomplete and should be remanded, and that neither appellant's attorney at the time of the hearing nor the hearing officer placed into the record readily available evidence. Counsel especially contends that hospital and medical records should have been presented. The discontinuance of benefits was predicated solely upon appellant's work history which established that she was engaged in substantial gainful activity. If one, in fact, engages in such activity, no medical record or medical opinion can alter such fact. Likewise, if one is, in fact, engaged in substantial gainful employment, logic dictates that such person is capable of engaging in substantial gainful employment, which is the sole test under the Social Security Act for a "disability."

---

1. The investigation was apparently instigated by reason of the respective employers' filing required tax reports showing Miss Goldfin as a paid employee.

This decision, of course, does not preclude Miss Goldfin from hereafter applying and receiving disability benefits provided she again meets the requirements of the statute.

I have carefully considered the record and arguments of counsel. Irrespective of one's natural sympathy toward Miss Goldfin, the limited scope of review mandates that the factual findings, supported as they are by substantial evidence, be conclusive, and under such established facts, the decision of the Secretary of HEW is clearly correct and must be affirmed.